STATE OF WEST VIRGINIA

*v.*

LONNIE EDWARD BUTCHER

(No. 13963)

Decided September 23, 1980.

*Charles T. Bailey* for plaintiff-in-error.

*Chauncey H. Browning*, Attorney General, *Richard L. Earles*, Assistant Attorney General, for defendant-in-error.

CAPLAN, JUSTICE:

This is an appeal from a final order entered in the Circuit court of Logan County on September 11, 1975, pursuant to a jury verdict finding the appellant guilty of voluntary manslaughter. The appellant was sentenced to confinement in the West Virginia Penitentiary for an indeterminate term of one to five years.

On December 14, 1974, the appellant, Lonnie Edward Butcher, had an altercation with the victim while on the appellant's property. Following the altercation, the appellant entered his home which was located nearby. Shortly thereafter he reappeared. The appellant took several steps and was apparently approached by the victim. At the trial upon the merits, there was conflicting testimony concerning the subject incident. The appellant's evidence indicates that the victim had a knife when the appellant appeared. The victim, with knife in hand, approached the appellant in a threatening manner. As the latter backed away, he warned the victim to drop the knife. Upon his failure to heed the warning, the appellant fired his pistol once, causing his death. On the other hand, the prosecution's case indicates that the victim was armed with a knife but that he dropped it before his encounter with the appellant. Before the appellant discharged his weapon, the victim held up his hand, asking not to be shot.

The appellant advances nineteen (19) assignments of error in his appeal. Those argued may be consolidated into the following four groups: (1) the competency of two witnesses to testify, one age seven and one age thirteen at the time of the trial; (2) the giving of an instruction presuming murder of the second degree where a deadly weapon is used in a homocide and thus presuming malice; (3) refusing of the Appellant's Instructions Nos. 6,7,11,18, and 19; and, (4) the giving of State's Instruc-

tions Nos. 5,6, and 6A on the ground that they were repetitious.

## I.

The first witness offered by the State was Elmo Vernon Miller, Jr., age thirteen at the time of the trial. To determine the competency of this witness, the court asked questions concerning his name, age, address, and grade in school. The witness also stated that while he did not go to church, he knew what it meant to swear and tell the truth, and that if he did not tell the truth, he would be sent to Pruntytown. After the appellant objected, alleging that the witness was not properly qualified, the court questioned the witness more extensively in chambers. The witness responded that his grades were C's, D's, and F's; that he had never been a witness before; that he had been in court on a juvenile matter when he was six years old; that he intended to tell the truth; and that he did not know what God would do if he told a lie but he knew he could be sent to Pruntytown. The court overruled the objection to the competency of this witness and permitted him to testify as to his account of the incident.

The State's second witness was John Maynard, age seven at the time of the trial and age six at the time of the event. The court extensively examined this witness in his chambers to determine his competency to testify. He testified that he was in the first grade at Monaville and that he made good grades; that he did not attend Sunday School or church but he believed in God; that he believed he would be sent to Shantytown if he testified falsely; and that he was afraid of the Judge but did not know what God would do if he told a lie. After noting that the witness was a borderline case, the court proceeded to question him concerning his observations the day of the altercation. The witness related that the victim asked the appellant not to shoot him. This testimony had not been given by the witnesses who preceded him. Also, in some instances, he testified differently from other prosecution witnesses. The appellant's counsel then

questioned the witness about the incident and at the close of questioning voiced his objection to his competency. The court, after noting that the testimony of the witness was different from that of the older boy, determined that he was qualified on a "limited basis", the reason for the limitation being his age and so instructed the jury.

The early West Virginia rule was that a witness fourteen years or older was presumed to be competent; no such presumption existed if a witness was less than fourteen years of age. *State v. Michael*, 37 W.Va. 565, 16 S.E. 803 (1893). However, the rule of competency was modified in *State v. Wilson*, 157 W.Va. 1036, 207 S.E. 2d 174 (1974), when the Court stated as a general rule that a presumption against competency arises for witnesses under the age of fourteen years. So, there now exists a rebuttal presumption that children under the age of fourteen years are incompetent to testify. The competency of an infant to testify is determined at the time his testimony is offered in evidence. *Cross v. Commonwealth*, 195 Va. 62, 77 S.E.2d 447 (1953). See generally, 81 Am. Jur. 2d *Witnesses*, § 88; 97 C.J.S. *Witnesses*, § 58. Nevertheless, it is obvious that the capacity of the child at the time of the occurrence about which he is asked to testify enters into the consideration of his competence. A child who has sufficient intelligence to be competent as a witness concerning a recent event is incompetent as a witness concerning an event which occurred when he was so young that he does not have an accurate recollection of it. *Hildreth v. Key*, 341 S.W. 2d 601 (Mo. 1960). See generally, 81 Am. Jur. 2d *Witnesses*, § 88; 97 C.J.S. *Witnesses*, § 58. The Court said in *Wilson, supra:*

> "[T]he intelligence, not the age, of a young child is the test of its competency as a witness; that is to say, to be considered competent, a child must be able to receive accurate impressions of the facts to which its testimony relates, and to relate truly the impressions received.

The child is not a competent witness if he is of such a young age and lacking in mental facilities as to be legal-

ly irresponsible for his conduct and has no idea or conception of the legal or moral obligation of an oath. It has been stated that " 'the effect of an oath on the conscience of a child should arise from religious feelings of a permanent nature, and not merely from instructions confined to the nature of an oath recently communicated to [him] for the purpose of the trial.' " *State v. Michael, supra*, at 570, 16 S.E. at 804. It is the court's duty to carefully question and examine the witness as to age, capacity and moral and legal accountability to determine his competency. The question of the competency is properly for the trial court to determine and will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *State v. Wilson, supra; State v. Farley*, 125 W.Va. 266, 23 S.E. 2d 616 (1942).

Applying these rules and guidelines to the seven year old witness, we conclude that there was sufficient evidence to support the trial court's findings that the child was competent to testify. The seven year old witness was examined extensively by the court to determine his competency at the time of the trial. The witness demonstrated his ability to recall the occurrence even though his version differed from that of the older boy. Although the witness did not attend church regularly, he did state that he believed in God. The witness did understand that he would go to "Shantytown" (his name for Pruntytown) if he lied on the witness stand and he did not want to go there because "mean boys" were kept there. Therefore, it is apparent that the court believed the seven year old witness to be legally and morally accountable to his oath. The appellant's contention that the seven year old witness was not competent because he contradicted himself on three material points is not well taken. The fact that the testimony of a witness is inconsistent does not render him incompetent as a witness; rather, such inconsistency goes to his credibility. *Hayes v. State*, 264 S.E.2d 307 (Ga. 1980). The inconsistent testimony is a matter for impeachment and closing argument and the appellant's counsel did pursue these avenues at the trial.

The thirteen year old witness was not as extensively examined by the court as the seven year old witness. He did state that he believed in God and understood that he would be sent to Pruntytown if he did not tell the truth. Although the court's examination to determine the competency of this witness was not thorough, we conclude that the trial court did not abuse its discretion in finding that the child was competent to testify. The trial court had the benefit of observing the demeanor of the witness as he testified, and we are without such benefit. We will defer to the trial court's findings that the witness was competent to testify but we encourage courts to make a more thorough examination in future cases involving witnesses of tender years.

II.

The trial court gave State's Instruction No. 2 which reads:

> The Court instructs the jury that where a deadly weapon is used in a homicide, the presumption in this state is that it is murder of the second degree, and the burden is on the state of showing, if she can, that it was murder of the first degree; and upon the accused of showing, if he can, that it was without malice, and therefore only manslaughter, or that he acted lawfully, and is therefore not guilty. The Court further instructs the jury that in arriving at a verdict in this case as to the degree of guilt, if any, the jury should take into consideration all the evidence and circumstances in this case, that given both for the state and the defendant.

The State concedes that this instruction is contrary to *State v. Pendry*, 159 W.Va. 738, 227 S.E.2d 210 (1976), in that it shifts the burden from the State to the appellant but argues that it is harmless constitutional error. This Court has recognized the harmless constitutional error doctrine where burden-shifting instructions have been given and the verdict results in a conviction of less than murder. *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978); *State v. Mason*, 162 W.Va. 297, 249 S.E.2d 793

(1978). In adopting the harmless constitutional error doctrine, the test set forth by this Court is "a court can confidently declare beyond a reasonable doubt that such instruction in no way contributed to the conviction or affected the outcome of the trial." *Mason, supra* at 799. The test set forth in *Kirtley, supra* at 378, was "where the instruction is not related to the actual verdict." There having been a conviction of less than murder in this case, the tests set out in *Mason* and *Kirtley* have been met. We conclude, therefore, that the giving of State's Instruction No. 2 was not reversible error.

## III.

The appellant alleges that it was error for the trial court to refuse his Instructions Nos. 6, 7, 11, 18 and 19. Upon a careful reading of these instructions and the record, we conclude that they are incomplete and misleading. It has been consistently held in criminal cases that instructions which are confusing, misleading or which incorrectly state the law should not be given. *State v. Bolling*, 162 W.Va. 103, 246 S.E.2d 631 (1978); *Wilson v. Edwards*, 138 W.Va. 613, 77 S.E.2d 164 (1953). We conclude that the trial court's refusal to give Appellant's Instructions Nos. 6, 7, 11, 18 and 19 was not erroneous.

## IV.

The appellant's final allegation is that the State's Instructions Nos. 5, 6, and 6A are repetitious. The court may refuse instructions which do not furnish any additional aid to the jury when proper instructions have already been given, *State v. Putman*, 157 W.Va. 899, 205 S.E.2d 815 (1974), as it is unnecessary and undesirable to repeat and duplicate instructions. *Kretzer v. Moses Pontiac Sales Inc.*, 157 W.Va. 600, 201 S.E.2d 275 (1973). However, upon examination of the instructions, we believe the appellant's allegation is without merit.

For the reasons stated herein, the judgment of the Circuit Court of Logan County is affirmed.

*Affirmed.*