# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0333** (Berkeley County 17-F-233)

**Shaniqua Whindleton,**
**Defendant Below, Petitioner**

**FILED**
**May 26, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Shaniqua Whindleton, by counsel Kevin D. Mills and Shawn R. McDermott, appeals the March 13, 2019, order of the Circuit Court of Berkeley County that sentenced her to one to five years in prison on the charge of possession with intent to deliver marijuana and which suspended such sentence in favor of probation for a period of five years. The State of West Virginia, by counsel Shannon Frederick Kiser, filed a response in support of the circuit court's order. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2016, petitioner was a passenger in a vehicle being driven by Joshua Shaine Moore that was stopped by Trooper D.R. Walker in Berkeley County, West Virginia. Inside the vehicle, Trooper Walker discovered large amounts of individually sealed bags of marijuana, a vacuum sealer, empty plastic bags, a vacuum-sealed and loaded .357 Magnum revolver that had been wiped clean, and other evidence that resulted in the arrest of petitioner, Mr. Moore, and a second passenger, Abdul Kamara. All three were subsequently indicted on the charges of possession with intent to deliver marijuana, *see* W. Va. Code § 60A-4-401(a)(ii), transportation of a controlled substance into the state, *see* W. Va. Code § 60A-4-409(a), and one count of conspiracy to commit possession with intent to deliver marijuana. *See* W. Va. Code § 61-10-31.[1]

---

[1] Mr. Kamara was also charged with being a prohibited person in possession of a firearm. *See* W. Va. Code § 61-7-7(a)(8). He subsequently entered a guilty plea to the misdemeanor offense of conspiracy to possess marijuana and was sentenced to time served. Mr. Moore was convicted

1

On December 5, 2017, petitioner and the State entered into a deferred adjudication agreement under which petitioner pled guilty to the felony offense of possession with intent to deliver marijuana, which, pursuant to West Virginia Code § 61-11-22a,[2] the circuit court held in abeyance and placed petitioner on probation/pretrial release for a period of three years, with

by a jury of all three counts of the indictment. *See infra.* His conviction was affirmed by this Court in *State v. Moore*, No. 18-0786, 2020 WL 533113 (W.Va. Feb. 3, 2020) (memorandum decision).

[2] West Virginia Code § 61-11-22a provides:

(a) Upon the entry of a guilty plea to a felony or misdemeanor before a circuit or magistrate court of this state entered in compliance with the provisions of West Virginia Rule of Criminal Procedure 11 or Rule 10 of the West Virginia Rules of Criminal Procedure for Magistrate Courts and applicable judicial decisions, the court may, upon motion, defer acceptance of the guilty plea and defer further adjudication thereon and release the defendant upon such terms and conditions as the court deems just and necessary. Terms and conditions may include, but are not limited to, periods of incarceration, drug and alcohol treatment, counseling and participation in programs offered under articles eleven-a, eleven-b and eleven-c, chapter sixty-two of this code.

(b) If the offense to which the plea of guilty is entered is a felony, the circuit court may defer adjudication for a period not to exceed three years. If the offense to which the plea of guilty is entered is a misdemeanor, the court may defer adjudication for a period not to exceed two years.

(c) If the defendant complies with the court-imposed terms and conditions he or she shall be permitted to withdraw his or her plea of guilty and the matter dismissed or, as may be agreed upon by the court and the parties, enter a plea of guilty or no contest to a lesser offense.

(d) In the event the defendant is alleged to have violated the terms and conditions imposed upon him or her by the court during the period of deferral the prosecuting attorney may file a motion to accept the defendant's plea of guilty and, following notice, a hearing shall be held on the matter.

(e) In the event the court determines that there is reasonable cause to believe that the defendant violated the terms and conditions imposed at the time the plea was entered, the court may accept the defendant's plea to the original offense and impose a sentence in the court's discretion in accordance with the statutory penalty of the offense to which the plea of guilty was entered or impose such other terms and conditions as the court deems appropriate.

(f) The procedures set forth in this section are separate and distinct from that set forth in West Virginia Rule of Criminal Procedure 11(a)(2).

2

specific terms and conditions. Pursuant to the agreement, petitioner was required to

> fully cooperate with the State on the prosecution of this and pending cases against any and all co-defendants. . . . This cooperation includes the [petitioner] providing recorded, truthful, and full debriefings to the State about the aforementioned crimes . . . . Any failure by the [petitioner] to cooperate fully and truthfully as directed by the Berkeley County Prosecuting Attorney's Office or other state and local law enforcement authorities identified by this office in any and all matters relevant to this matter will constitute a breach of this agreement by the [petitioner].

In exchange, the State agreed to dismiss all remaining counts of the indictment against petitioner.

> The deferred adjudication agreement further provided that,

> [i]f the prosecuting attorney or the Probation department files a motion to accept [petitioner's] plea of guilty based upon an allegation that [petitioner] violated the terms and conditions imposed upon her by the court during the period of deferral and, after a hearing, the circuit court determines that there is reasonable cause to believe that the [petitioner] violated the terms and conditions, the Court shall enter the felony offense and sentence [petitioner] at the Court's discretion. [Petitioner] specifically waives any right to graduated sanctions that may exist pursuant to W. Va. Code 61-11-22a or 61-12-10.

However, under the agreement, "if [petitioner] successfully completes the period of deferral, the [petitioner] may withdraw her plea to the felony and enter a plea to misdemeanor possession of a controlled substance, marijuana [§ 60-4-401(c)] a lesser included offense, and be sentenced to a fine."

The circuit court thereafter accepted the agreement and entered a pretrial diversion order on January 31, 2018. Relevant to this appeal, additional terms and conditions to the deferred adjudication agreement were agreed upon and appended to the court's order, including that petitioner "not have any direct or indirect contact with any . . . co-defendant . . . ." and that petitioner "not use, consume, purchase, possess, or distribute any narcotics, marijuana, or other controlled substance, unless prescribed for him or her by a physician."

Meanwhile, the trial of petitioner's co-defendant, Mr. Moore, was scheduled to proceed on all three counts of the indictment.[3] Petitioner was subpoenaed to testify. In preparation for Mr. Moore's trial, petitioner and her counsel twice met with the assistant prosecuting attorney and Trooper Walker regarding her testimony. The meetings with petitioner were memorialized in an August 1, 2018, memorandum prepared by the assistant prosecuting attorney, Kevin J. Watson ("APA Watson"), and signed by both APA Watson and Trooper Walker. The memorandum noted that, at the first meeting, petitioner denied knowing anything about the marijuana that was found in Mr. Moore's vehicle; admitted "that she thought something might be up, but didn't know if [Mr.

---

[3] The circuit court rejected a proposed plea agreement between Mr. Moore and the State.

Moore] sold marijuana"; and maintained that "she didn't know anything about a plan to sell or distribute" the marijuana, stating "I don't know and I won't assume." During that meeting, petitioner also "maintained that she didn't know [Mr. Moore] well, that they were just having sex but weren't in a relationship."

At the second meeting, the memorandum noted, petitioner eventually admitted that she had been in a serious relationship with Mr. Moore, and that, even though he often stayed at her house, did not have a car, and petitioner would often give him a ride, she denied "any detailed knowledge about Mr. Moore's marijuana operation/sales." Regarding the marijuana that was found in the vehicle at the time of her arrest, petitioner advised that Mr. Moore "briefly mentioned to her about selling the Marijuana to 2 different dispensaries in Whiteplains, N[ew] Y[ork] (near New York City), he said he wanted to see what they thought of his stuff." Petitioner further advised that "she didn't know anything about Abdul Kamara [the other passenger], and that he just showed up one day, she believed they [Kamara and Moore] lived together in California for a while." Regarding photographs that were found on Mr. Moore's phone of packages that contained marijuana that had shipping labels addressed to petitioner on them, petitioner stated that, although she lived alone, she never received any such packages and could not explain the pictures on Mr. Moore's phone. Regarding the gun that was found vacuum-sealed in the vehicle, petitioner claimed that it belonged to her, could not explain why male clothing was found in the bag with the gun, and "specifically denied wiping it for fingerprints or packaging it . . . for any illegal or bad purposes." Finally, although petitioner "agreed with Trooper [W]alker that [Mr. Moore] had used her, and indicated that they were not together now and they don't talk[,]" petitioner was present at Mr. Moore's pre-trial hearing "and was seated behind Mr. Moore—seemingly directly contradicting her statements that they were not together now and they don't talk." In sum, the memorandum stated:

> It was clear that [petitioner] was minimizing her knowledge and relationship with Mr. Moore, was directly untruthful about several matters, and generally was not cooperating with law enforcement on this matter. The State proceeded with the jury trial of Mr. Moore without [petitioner as a witness], based in large part upon her uncooperativeness and untruthfulness.[4]
>
> . . . .
>
> During the statements, when [petitioner] would speak about marijuana, Joshua Moore, or the firearm, her voice and body language would change, making it appear as though she was being deceitful.

(Footnote added).

On August 14, 2018, the State filed a Motion to Revoke Deferred Adjudication and Accept the Defendant's Plea of Guilty. The State requested a hearing "to determine if there is reasonable cause to believe that the defendant violated the terms and conditions imposed[,]" including the requirements that she "shall truthfully answer all inquiries of . . . any law enforcement officer[,]" and "shall not have any direct or indirect contact with any . . . co-defendant . . . ." Upon such a

---

[4] Mr. Moore was convicted on all three counts of the indictment.

4

finding, the State requested that the court "accept and adjudicate [petitioner] upon the guilty plea to Possession With Intent to Deliver Marijuana . . . and sentence [her] in the [c]ourt's discretion."

The State filed a supplement to its motion to revoke on September 7, 2018, in which it alleged that petitioner violated an additional term and condition of her deferred adjudication—that is, petitioner tested positive for marijuana despite the condition directing that she not consume marijuana or any other controlled substance.

A revocation hearing was conducted on September 17, 2018, at which Trooper Walker testified.[5] Trooper Walker's testimony was consistent with the observations made in the August 1, 2018, memorandum. In an order entered on September 18, 2018, the circuit court found that the evidence presented at the September 17th hearing "show[ed] reasonable cause to believe that [petitioner] violated a condition of her Deferred Adjudication Agreement as alleged" by the State. The court found:

> Specifically, [petitioner] was untruthful regarding her relationship with the co-defendant who was the target of the investigation. In addition to being a violation of her terms of deferred adjudication, this was material because it was bargained for by the State in the plea agreement. [Petitioner] got her bargained[-]for relief, but the State did not get a witness on the inside of the operation.

The court ordered that a pre-sentence investigation report be prepared and scheduled an additional hearing for entry of judgment and sentencing.

On December 10, 2018, the circuit court conducted a disposition hearing on the State's motion to revoke.[6] According to its December 20, 2018, order,

> [p]rior to hearing argument, the [c]ourt noted the binding nature of the plea agreement: specifically, that paragraph 7, line 5 of the agreement states that the [c]ourt "shall" enter the conviction if the Court finds that [petitioner] violated a term of her deferred adjudication. The [c]ourt noted that[,] pursuant to [] its previous unequivocal acceptance of the plea agreement, and Syl. Pts. 4 and 5 of *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 189, 465 S.E.2d 185, 189 (1995), it believes it is without jurisdiction to place [petitioner] back upon deferred adjudication.[7]

---

[5] Petitioner's probation officer, Lara Nine, also testified.

[6] A copy of the December 10, 2018, hearing transcript was not made a part of the appendix record.

[7] Syllabus points 4 and 5 of *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 465 S.E.2d 185 (1995) held:

> Once a circuit court unconditionally accepts on the record a plea agreement under Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure, the circuit court is without authority to vacate the plea and order reinstatement of the

At petitioner's request, the circuit court continued the hearing on the motion to revoke and "specifically[,] on the issue of the [c]ourt's ability to enter the conviction, and any sentencing/disposition issues[.]"

Following a hearing on February 11, 2019, the circuit court entered an order on March 13, 2019, that concluded that petitioner "does now stand convicted of the offense of possession with the intent to distribute [sic] marijuana, a felony," and sentenced her to one to five years in prison, which sentence was ordered to be suspended in favor of probation for five years. The court stayed its order pending this appeal.

This Court reviews the circuit court's order under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *State v. Hinchman*, 214 W. Va. 624, 591 S.E.2d 182 (2003) (citation omitted).

In her first assignment of error, petitioner argues that the circuit court erred in finding that reasonable cause existed that she violated the terms of the deferred adjudication agreement, which required that she "fully cooperate with the State on the prosecution of" Mr. Moore, including that she "provid[e] recorded, truthful, and full debriefings to the State about the . . . crimes." Petitioner argues that she substantially complied with the agreement by truthfully informing law enforcement that Mr. Moore was driving to New York for the purpose of delivering the marijuana to a dispensary. Petitioner argues that she was prepared to testify at Mr. Moore's trial and that her testimony would have helped to prove the charges on which he was being tried – i.e., possession with intent to deliver marijuana, transportation of a controlled substance into the state, and conspiracy to commit possession with intent to deliver marijuana. She contends that Trooper Walker incorrectly determined that she was untruthful because her statements did not comport with his theory that Mr. Moore intended to sell the marijuana to a gang in New York, which petitioner found to be "preposterous" and without a basis in fact. In any event, petitioner argues, there was overwhelming evidence presented to convict Mr. Moore and, therefore, her testimony

original charge. Furthermore, after a defendant is sentenced on the record in open court, unilateral modification of the sentencing decision by the circuit court is not an option contemplated within Rule 11(e)(1)(C).

A circuit court has no authority to vacate or modify, *sua sponte,* a validly accepted guilty plea under Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure because of subsequent events that do not impugn the validity of the original plea agreement.

6

was not necessary. Finally, petitioner argues that whether she was totally forthcoming about the extent of her romantic relationship with Mr. Moore was not material to the determination of whether she fully and truthfully cooperated with the State in connection with Mr. Moore's prosecution.

We find no error. Trooper Walker's testimony revealed that petitioner was not truthful about her relationship with Mr. Moore, and, in his view, petitioner was also untruthful about the actual purpose of transporting the marijuana to New York, as her statements were not consistent with the evidence as they presented it to her.[8] This Court has repeatedly stated that, as a reviewing court, we "cannot assess witness credibility through a record." *Michael D.C. v. Wanda L.C.,* 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). *See also Gum v. Dudley*, 202 W. Va. 477, 484, 505 S.E.2d 391, 398 (1997) ("The trial court [is in the best position to] observe[ ] the demeanor of the witnesses . . . that a record simply cannot convey."); *State v. Butcher*, 165 W. Va. 522, 527, 270 S.E.2d 156, 159 (1980) ("The trial court had the benefit of observing the demeanor of the witness as he testified, and we are without such benefit."). Petitioner has failed to show that the circuit court was clearly wrong in finding that there was reasonable cause to believe that petitioner violated the condition of her deferred adjudication agreement requiring that she fully and truthfully cooperate with the state in connection with Mr. Moore's prosecution. *See Hinchman*, 214 W. Va. at 626, 591 S.E.2d at 184, syl. pt. 2. Further, petitioner's argument that her allegedly untruthful characterization of her relationship with Mr. Moore was not material to the investigation of his case is not compelling. As the circuit court correctly found, the State entered into the deferred adjudication agreement with petitioner on the condition that she provide inside information about Mr. Moore's drug distribution operation. She refused to provide the bargained-for information. We find no error in the court's conclusion that petitioner's breach of the agreement was material.

Further, though not included in the circuit court's revocation order, evidence was presented that petitioner committed additional violations of her agreement – that is, the requirements that she not have contact with Mr. Moore or consume marijuana. The record reveals that petitioner attended Mr. Moore's trial seemingly in support of him and, further, that she tested positive for marijuana during her period of probation/pre-trial release. Petitioner does not dispute that she violated these conditions of her deferred adjudication agreement. *See* Syl. Pt. 11, *State ex rel. Vernatter v. Warden, W. Virginia Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999) ("'This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.' Syllabus point 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965)."). Based upon the foregoing, therefore, we conclude that the circuit court did not err in finding that there was reasonable cause to believe that petitioner violated the terms and conditions of her deferred adjudication agreement.

---

[8] As noted in the memorandum, which was written after the completion of Mr. Moore's jury trial, "Trooper Walker presented [petitioner] with a factual scenario that the evidence was pointing to (and that the jury apparently foun[d] beyond a reasonable doubt at Mr. Moore's jury trial). In response, [petitioner] stated that Trooper Walker can have his opinion but she doesn't know anything about that."

7

We next address petitioner's assignment of error that the circuit court erred in determining that it did not have the discretion to continue petitioner on deferred adjudication. The agreement stated, in relevant part, as follows:

> If the prosecuting attorney or the Probation department files a motion to accept [petitioner's] plea of guilty based upon an allegation that [petitioner] violated the terms and conditions imposed upon her by the court during the period of deferral and, after a hearing, the circuit court determines that there is reasonable cause to believe that the defendant violated the terms and conditions, *the Court shall enter the felony offense and sentence defendant at the Court's discretion.* [Petitioner] specifically waives any right to graduated sanctions that may exist pursuant to W. Va. Code 61-11-22a or 61-12-10.

(Emphasis added).

Petitioner argues that the emphasized language – "[i]f . . . the circuit court determines that there is reasonable cause to believe that the defendant violated the terms and conditions, the Court *shall* enter the felony offense and sentence defendant *at the Court's discretion*" – coupled with the language set forth in West Virginia Code § 61-11-22a(e), afforded the circuit court the discretion not to enter the felony offense of possession with intent to deliver marijuana, but to continue petitioner on deferred adjudication (i.e., probation), with additional conditions. West Virginia Code § 61-11-22a(e) provides:

> In the event the court determines that there is reasonable cause to believe that the defendant violated the terms and conditions imposed at the time the plea was entered, the court may accept the defendant's plea to the original offense and impose a sentence in the court's discretion in accordance with the statutory penalty of the offense to which the plea of guilty was entered or impose such other terms and conditions as the court deems appropriate.

This Court has made clear that "[a]s a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *Brewer*, 195 W. Va. at 192, 465 S.E.2d at 192. Relying on *Paroline v. United States*, 572 U.S. 434, 447 (2014), petitioner argues that this Court should apply the canon of statutory construction that provides that "'[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.'" (quoting *Porto Rico Railway, Light & Power Co. v. Mor,* 253 U.S. 345, 348 (1920)).[9] At the very least, petitioner argues, the phrase "at the Court's discretion" in the deferred adjudication agreement should be construed as modifying *both* the entry of the felony offense and sentencing. According to petitioner, the burden was on the State to draft the agreement with clarity and, because it failed to do so, it must be construed against the State and in favor of petitioner:

> Due to the significant constitutional rights that a criminal defendant waives in connection with the entry of a guilty plea, the burden of insuring both precision

---

[9] Petitioner identifies this canon of construction as the "series qualifier" canon.

and clarity in a plea agreement is imposed on the State. Consequently, the existence of ambiguity in a court-approved plea agreement will be construed against the State and in favor of the defendant.

Syl. Pt. 3, *State ex rel. Thompson v. Pomponio*, 233 W. Va. 212, 757 S.E.2d 636 (2014).

We disagree as we do not find the deferred adjudication agreement to be ambiguous and, as a result, conclude that rules of statutory construction do not apply. We have explained that

> "'[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.' Syllabus point 3, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962)." Syl. Pt. 3, *Cabot Oil & Gas Corp. v. Huffman*, 227 W.Va. 109, 705 S.E.2d 806 (2010).

*State v. Stewart*, No. 18-0006, 2019 WL 181479, *5 (W. Va. Jan. 14, 2019) (memorandum decision). Petitioner's assertion that the deferred adjudication agreement is ambiguous does not make it so. We recognize that West Virginia Code § 61-11-22a(e) gives courts the discretion to accept a defendant's plea to the original offense and impose a sentence where there is a reasonable cause to believe the terms and conditions of a plea agreement have been violated. In this case, as authorized by West Virginia Code § 61-11-22a(e), the agreement clearly required the circuit court to enter the original felony offense as evidence by the use of the word "shall," *see generally* Syl. Pt. 1, *Nelson v. W. Va. Pub. Emp. Ins. Bd,* 171 W. Va. 445, 300 S.E.2d 86 (1982) (holding that the word "shall . . . should be afforded a mandatory connotation"), while also allowing it to sentence petitioner "at [its] discretion." The circuit court adhered to the plain language of the agreement when, upon finding that petitioner violated the agreement, it entered the offense of possession with intent to deliver marijuana, and, in its discretion, sentenced petitioner to a period of five years in prison, which sentence it suspended in favor of five years of probation. We, therefore, find petitioner's argument that the agreement is ambiguous and should have been construed against the State and in her favor to be without merit.

Additionally, petitioner argues that if the agreement is deemed to be unambiguous, she did not make a knowing, intelligent, and voluntary waiver of her statutory right to have the circuit court exercise discretion in imposing the felony conviction upon finding a violation. According to petitioner, the discretion afforded the circuit court in deciding disposition, as set forth in West Virginia Code § 61-11-22a(e), "is an important due process right that [petitioner] would be required to waive." We find no error.

The record reveals that, during the January 25, 2018, plea hearing, it was petitioner's counsel who summarized the deferred adjudication agreement as one where

> [petitioner] would be tendering a conditional plea to the felony offense of possession with intent to deliver marijuana. And if she's successful on three years of supervised probation, it would be reduced down to misdemeanor of simple possession. *And, of course, if she is not successful, then the felony would be entered against her.*

9

(Emphasis added).

The circuit court proceeded to conduct the plea colloquy, explaining to petitioner that

I have to ask you certain questions in order to take a valid plea. Now, this is deferred, so, this is all, you know, the way the lawyers think is: What's the worst that's going to happen? So all of this is going to be phrased as, you know if you were to at some point in the indefinite future violate the terms of the deferral, at that point you come back, we have a hearing, you did or you didn't. *If I find reasonable cause to believe you did, then, you know, we enter judgment on the severer of the charges, the felony possess [sic] with intent to deliver.* And so that's the reasons for all this, you know, procedure, with respect to it, because taking a felony plea is a big deal.

(Emphasis added). Petitioner's counsel did not object or otherwise correct the circuit court's explanation of the agreement to petitioner. Finally, the court advised petitioner that

what [the deferred adjudication agreement] does is, you know, contingent on how you perform, if you do well, then you get the possession if you – if there's a problem and we have a hearing and it is determined that you have a problem, *the next step is enter judgment on the felony conviction.*

*And then, of course, everybody has to argue what they think is right for sentencing,* and that could mean a penitentiary sentence for a felony.

Do you understand that?

A.  Yes, sir.

(Emphasis added).

The record thus clearly shows that petitioner understood that a violation of the deferred adjudication agreement required the circuit court to enter judgment on the felony conviction of possession with intent to deliver marijuana while allowing it to sentence her in its discretion. Therefore, we conclude that, if petitioner was required to waive her rights under West Virginia Code § 61-11-22a(e), she did so knowingly, intelligently, and voluntarily.

Petitioner also argues that the parties intended that the deferred adjudication agreement give the circuit court full discretion in both entry of the felony conviction and sentencing, as provided for in West Virginia Code § 61-11-22a(e), and that the court erred in failing to reform the agreement to reflect the same. *See* Syl. Pt. 4, *Smith v. Smith,* 219 W. Va. 619, 639 S.E.2d 711 (2006) ("A mutual mistake is one which is common to all parties, wherein each labors under the same misconception respecting a material fact or provision within the agreement."). We find no error. As we have already established, petitioner clearly understood that the unambiguous language of the agreement did not afford the circuit court discretion with regard to entering judgment on the

felony conviction of possession with intent to deliver marijuana. Thus, the circuit court did not err in refusing to reform the deferred adjudication agreement.

Finally, we address petitioner's assignment of error that the circuit court erred in finding that the State did not violate her due process rights by failing to disclose impeachment evidence regarding Trooper Walker. Petitioner contends that she learned, via media reports, that Trooper Walker had been terminated from his employment following his involvement in the beating of a juvenile during the course of an arrest and that she requested information from the State as to whether Trooper Walker had lied on official police documents relating to that incident. Petitioner argues that the State failed to provide the requested information, that the circuit court failed to reopen the revocation proceedings, and that the court erred in finding that her due process rights were not violated by the same.

We find no error. Petitioner fails to point to anywhere in the record where the circuit court considered whether petitioner was entitled to Trooper Walker's personnel records or other information regarding the arrest of the juvenile. Although petitioner requested the records in Defendant Shaniqua Whindleton's Memorandum Regarding Interpretation of Plea Agreement, which she filed on February 7, 2019, our review of the February 11, 2019, hearing transcript reveals that petitioner failed to raise the issue at that time or to otherwise request that the revocation proceedings be reopened for consideration of the same. This Court has cautioned that "[i]t is the responsibility of the parties to ensure that the record is preserved for our review. Indeed, [petitioner], as the moving party, must assume the burden of bringing his motion to the attention of the trial court." *State v. Garrett*, 195 W. Va. 630, 642, 466 S.E.2d 481, 493 (1995) (citing *State v. Moran,* 168 W. Va. 688, 691, 285 S.E.2d 450, 453 (1981)). *See State v. Lively*, 226 W. Va. 81, 92, 697 S.E.2d 117, 128 (2010) (quoting *State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996) ("'[I]n general, the law ministers to the vigilant, not to those who sleep on their rights. . . . When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial . . . he or she ordinarily must object then and there or forfeit any right to complain at a later time.'")). Thus, we find no error in the proceedings below.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 26, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman

11